UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| MATTHEW THOMAS HOUFF,<br><br>                    Petitioner,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>                    Respondent. | Case No.: 4:22-CV-04070-KES<br><br><br>GOVERNMENT'S MEMORANDUM<br>IN SUPPORT OF ITS ANSWER<br>AND MOTION TO DISMISS |

This matter is before the Court upon its order dated June 1, 2022, directing the government to file its response to Matthew Thomas Houff's motion under 28 U.S.C. § 2255 to vacate, set aside, or correct sentence by a person in federal custody (§ 2255 motion).  Docket 1, 6.[1]  The United States respectfully submits this memorandum of law in support of its answer and motion to dismiss.

## BACKGROUND

### A.    Procedural History.

A grand jury charged Houff and 2 others with conspiracy to distribute a controlled substance in December 2019.  CR Docket 1.  A later Superseding Indictment added additional codefendants.  CR Docket 34.  A Second

---

[1] Entries from the docket in Houff's underlying criminal prosecution (4:19-cr-40115-KES) will be cited as "CR Docket" followed by the appropriate docket number and page if applicable.  References to the transcript of Houff's change-of-plea hearing will be to "PT" followed by the relevant page number.  References to the transcript of Houff's sentencing hearing will be to "ST" followed by the relevant page number.  Citations to filings in this civil matter will be cited to as "Docket" followed by the specific document number and page if applicable.

Superseding Indictment added a charge of conspiracy to launder monetary instruments against Houff.  CR Docket 55.   A Third Superseding Indictment added a charge of failure to appear against Houff.  CR Docket 140, 219.  A Fourth Superseding Indictment added additional defendants and a forfeiture allegation. CR Docket 223.   Houff was represented by attorney Ryan Kolbeck as of March 26, 2020.  CR Docket Entry, March 26, 2020.

Pursuant to a written plea agreement, Houff pleaded guilty to Counts 1 and 2 of the Fourth Superseding Indictment.  CR Docket 281, 292; PT 16.  On June 3, 2021, the Court varied downward from a Guidelines range of life imprisonment and sentenced Houff to serve a term of 360 months' custody on Count I and 240 months' custody on Count 2, with the sentences to run concurrently.  CR Docket 339, 341; ST 15.  Houff did not appeal to the Eighth Circuit Court of Appeals.  *See generally* CR Docket.

On May 31, 2022, Houff filed a Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255.  Docket 1.  Houff's § 2255 motion and supporting memorandum include 4 grounds.  He claims (1) counsel failed to explain the Guidelines and his Presentence Investigation Report (PSR), failed to suppress evidence wrongly used against him and test the credibility of the evidence, did not discuss pleading options, and did not go through discovery; (2) jurisdictional issues exist because his crimes were committed in California; (3) excessive sentencing in that his PSR was "all wrong and not true," which means "points were wrongly added up and used against [him]" which caused him to be "sentenced to the wrong guidelines"; and (4) "similar sentencing or like

sentencing" did not occur because he and his codefendants were all responsible for each other's actions, and yet he got the most time, which he claims is unfair and wrong.  Docket 1 at 5, 6.

## ARGUMENT AND AUTHORITIES

### A.   Timeliness.

A one-year statute of limitations applies to § 2255 motions, starting on the date a conviction becomes final.  28 U.S.C. § 2255(f).  Houff was sentenced on June 3, 2021, and the judgment on his conviction was filed June 4, 2021.  He did not appeal.  His conviction became final when the time for filing a direct appeal expired, which was 14 days later, on June 18, 2021. *See Garcia-Navarro v. United States*, No. 4:16-CV-04072, 2017 WL 2123935, at *4 (D.S.D. Jan. 24, 2017), *report and recommendation adopted*, No. 4:16-CV-04072-KES, 2017 WL 2116131 (D.S.D. May 15, 2017), *dismissed*, No. 17-2291, 2017 WL 6327552 (8th Cir. Oct. 30, 2017) (citing Fed. R. App. P. 4(b)(1)(A)(i); *Moshier v. United States*, 402 F.3d 116, 118 (2d Cir. 2005); *Sanchez-Castellano v. United States*, 358 F.3d 424, 428 (6th Cir. 2004); *Kapral v. United States*, 166 F.3d 565, 577 (3d Cir. 1999).  Houff's motion was timely filed on May 31, 2022.  Docket 1.

### B.   Applicable Case Law for Ineffective Assistance of Counsel Claims.

A motion under 28 U.S.C. § 2255 is not an appropriate remedy for every alleged error in conviction and sentencing.  *Meirovitz v. United States,* 688 F.3d 369, 370 (8th Cir. 2012).  Section 2255 relief is only available when the court lacked jurisdiction to impose a sentence, the sentence was imposed in violation

of the Constitution or laws of the United States, or the sentence exceeded the maximum sentence authorized by law. *Id.* Relief under § 2255 for errors of law is appropriate "only when 'the claimed error constitutes a fundamental defect which inherently results in a complete miscarriage of justice.'" *Id.* (citing *Sun Bear v. United States*, 644 F.3d 700, 704 (8th Cir. 2011) (en banc)).

The benchmark in evaluating ineffective assistance of counsel claims is "whether counsel's conduct *so undermined* the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Cullen v. Pinholster*, 563 U.S. 170, 189 (2011) (quoting *Strickland v. Washington*, 466 U.S. 668, 686 (1984)). The Supreme Court set forth the test used to establish ineffective assistance of counsel in *Strickland.* To establish ineffective assistance, a defendant must show: (1) counsel's performance was deficient, and (2) the deficient performance resulted in prejudice. *Premo v. Moore,* 562 U.S. 115, 121 (2011); *Strickland,* 466 U.S. at 686. Both prongs must be satisfied to prevail on an ineffective assistance claim. *Williams v. United States*, 452 F.3d 1009, 1013 (8th Cir. 2006).

To demonstrate deficient performance, a defendant must show counsel's errors were so "serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. This requires a showing that counsel's representation fell below an objective standard of reasonableness. *Id.* at 688. The "reasonableness" of counsel's conduct is "viewed as of the time of counsel's conduct." *Auman v. United States*, 67 F.3d 157, 162 (8th Cir. 1995). A defendant "must identify the

acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Strickland*, 466 U.S. at 690.  A court must then determine whether, under the totality of the circumstances, the acts or omissions fell outside the wide range of competent assistance, "not whether [counsel's representation] deviated from the best practices or most common custom." *Id.*; *Premo,* 562 U.S. at 122.  There is a strong presumption counsel provided adequate assistance.  *Strickland*, 466 U.S. at 690.

Once a defendant has shown deficient performance, he must then affirmatively show prejudice.  *Id.* at 687, 693.  A defendant must show more than that the error complained of had some effect on the outcome.  *Id.* at 693.  A defendant must show there is a reasonable probability the results of the proceedings would have been different but for counsel's deficient performance, that is, "a probability sufficient to undermine the confidence in the outcome." *Id.* at 694; *Cullen,* 563 U.S. at 190.  A "reasonable probability" requires a "substantial" likelihood the result would have been different.  *Allen v. United States,* 854 F.3d 428, 432 (8th Cir. 2017).

Satisfying the two-prong standard for ineffective assistance of counsel is not an easy task.  *Padilla v. Kentucky,* 559 U.S. 356, 371 (2010).  The burden to establish ineffective assistance is on the movant.  *United States v. Cronic,* 466 U.S. 648, 658 (1984); *United States v. White,* 341 F.3d 673, 678 (8th Cir. 2003).

Moreover, in considering whether trial counsel was ineffective, the prejudice analysis "may replace the deficiency inquiry altogether if the lack of prejudice is apparent." *O'Rourke v. Endell,* 153 F.3d 560, 570 (8th Cir. 1998).

"[T]here is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one." *Strickland,* 466 U.S. at 696. "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." *Ibid.*

Furthermore, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, a defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy." *Id.* at 689; *see Armstrong v. Kemna*, 534 F.3d 857, 863 (8th Cir. 2008) (quoting *Middleton v. Roper*, 455 F.3d 838, 846 (8th Cir. 2006)) ("Judicial scrutiny of counsel's performance is highly deferential, including a strong presumption that counsel's conduct falls within the wide range of reasonable professional judgment."). "Ordinarily, we consider strategic decisions to be virtually unchallengeable unless they are based on deficient investigation." *Worthington v. Roper*, 631 F.3d 487, 500 (8th Cir. 2011).

### C.    Procedural Default and the Relitigation Rule.

To adequately preserve a claim for collateral review, a federal prisoner must timely raise the issue at trial and on direct appeal. *See, e.g., Wainwright v. Sykes*, 433 U.S. 72, 85-86 (1977) (concluding claim defaulted when no contemporaneous objection was lodged at trial); *Murray v. Carrier*, 477 U.S. 478, 490–92 (1986) (concluding claim not raised on direct appeal is procedurally

defaulted).  Accordingly, "[c]ollateral proceedings under 28 U.S.C. § 2255 cannot be made to do service for an appeal." *United States v. Ward*, 55 F.3d 412, 413 (8th Cir. 1995).  Petitioners are precluded from asserting claims pursuant to § 2255 that they failed to raise on direct appeal.  *United States v. Frady*, 456 U.S. 152, 167-68 (1982); *McNeal v. United States*, 249 F.3d 747, 749 (8th Cir. 2001). When a § 2255 petitioner asserts a claim that is procedurally defaulted because it was not raised on direct appeal, the claim can only proceed after the petitioner has shown either: (1) actual innocence or (2) that the procedural default should be excused because there was both cause for the default and actual prejudice to the petitioner.  *Bousley v. United States*, 523 U.S. 614, 621-22 (1998); *McNeal*, 249 F.3d at 749.  Therefore, barring a claim of actual innocence, a petitioner must show both cause for why he failed to raise an issue on direct appeal as well as actual prejudice caused by the alleged errors.

While the procedural default rule generally bars claims that could have been raised on direct appeal, but were not, the relitigation rule reaches the same result from the opposite direction.  Namely, it precludes a federal defendant from raising again a claim they *did* litigate a claim in the original criminal proceeding, direct appeal, or in a prior collateral attack.  *See, e.g., Reed v. Farley*, 512 U.S. 339, 358 (1994) (Scalia, J., concurring in part and concurring in the judgment); *Withrow v. Williams*, 507 U.S. 680, 721 (1993) (Scalia, J., concurring in part and dissenting in part); *United States v. Lee*, 715 F.3d 215, 224 (8th Cir. 2013); *United States v. Martin*, 677 F.3d 818, 821 (8th Cir. 2012) (holding that claims "raised and decided on direct appeal cannot be relitigated on a motion to vacate

pursuant to 28 U.S.C. § 2255.") (citing *Davis v. United States*, 673 F.3d 849, 852 (8th Cir. 2012)); *Bear Stops v. United States*, 339 F.3d 777, 780 (8th Cir 2003)); *Thompson v. United States*, 7 F.3d 1377, 1379 (8th Cir. 1993) (internal citation omitted) (ruling argument previously resolved adversely on direct appeal "not cognizable" under § 2255).

### D.     Additional Considerations Following Guilty Pleas.

An allegation of ineffective assistance after a defendant had pleaded guilty implicates additional considerations.   Guilty pleas must be voluntarily and intelligently entered.   *Shoulders v. United States*, No. 5:21-CV-5082, 2022 WL 3912551, at *3 (D.S.D. Aug. 31, 2022) (citing *Bousley v. United States*, 523 U.S. 614, 618 (1998)).  To prove ineffective assistance of counsel after pleading guilty, the petitioner must show "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."  *Id.* (quoting *United States v. Frausto*, 754 F.3d 640, 643 (8th Cir. 2014); *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)).  "In the context of pleas a defendant must show the outcome of the plea process would have been different with competent advice."  *Lafler v. Cooper*, 566 U.S. 156, 163 (2012).  "Moreover, to obtain relief on this type of claim, a petitioner must convince the court that a decision to reject the plea bargain would have been rational under the circumstances."  *Padilla v. Kentucky*, 559 U.S. 356, 372 (2010).  "A cautionary note is in order in this context, as the Eighth Circuit repeated the admonition that, 'Courts should not upset a plea solely because of post hoc assertions from a defendant about how he would have pleaded but for his attorney's

deficiencies.'" *Shoulders*, 2022 WL 3912551, at *3 (quoting *Meza-Zopez v. United States*, 929 F.3d 1041, 1045 (8th Cir. 2019)).

### E. Evidentiary Hearing.

An evidentiary hearing may be necessary on a § 2255 motion if there are factual issues to be resolved, but "files and records of the case may be sufficient alone to dispose of the motion where they 'conclusively show that the prisoner is entitled to no relief.'" *United States v. Goodman,* 590 F.2d 705, 710 (8th Cir. 1979) (citations omitted); *see Hodges v. United States,* 368 U.S. 139, 140 (1961). The standard in the Eighth Circuit for dismissal without a hearing is as follows:

> A § 2255 motion may be dismissed without a hearing if (1) movant's allegations, accepted as true, would not entitle him to relief, or (2) [the] allegations cannot be accepted as true because they are contradicted by the record, are inherently incredible, or are conclusions rather than statements of fact.

*Winters v. United States,* 716 F.3d 1098, 1103 (8th Cir. 2013).

### F. Houff Is Not Entitled To Relief Under § 2255.

#### 1. Ineffective Assistance of Counsel.

Houff contends counsel was ineffective in several ways. He claims counsel failed to explain the Guidelines or how the PSR would affect his sentencing; failed to explain the plea agreement, to suppress evidence wrongly used against Houff, or to test credibility of his codefendants; Houff was unaware of the statements and evidence against him or his pleading options; and Houff never got to review his discovery. Docket 1 at 5.

At best, Houff makes a number of accusations about his counsel, generally in a conclusory sentence without any supporting facts or details. These

allegations are without any evidentiary basis in the record or in his motion itself. Conclusory or vague claims are insufficient to state a basis for relief under § 2255. *Hollis v. United States*, 796 F.2d 1043, 1046 (8th Cir. 1986); *see Smith v. United States*, 677 F.2d 39, 41 (8th Cir. 1982) (noting conclusory allegations, unsupported by any specific information, are subject to summary dismissal); *see also Bryson v. United States*, 268 F.3d 560, 562 (8th Cir. 2001) (ruling brief, conclusory allegations that failed to cite to the record were insufficient to support ineffective-assistance claims).

Aside from their conclusory nature, Houff's claims are unavailing in substance. The United States will respond separately to the different categories of ineffective assistance alleged.

### a.  Guidelines and PSR Affecting Sentencing.

Houff first claims his lawyer failed to explain the Guidelines or how his presentence report would affect his sentencing. Docket 1 at 5. At his change-of-plea hearing, under oath, Houff confirmed counsel had gone "over with you what he thinks your advisory guideline range will be[.]" PT 9. He confirmed he understood the Court would have to await a PSR and rule on objections to it, and that the "range that I find at the time of sentencing might be different than the estimate that [counsel] gave you." *Ibid.* He also verified he understood the Court would calculate his initial Guidelines range and would have to decide if his sentence should be higher or lower based on the Guidelines or the sentencing statute. *Ibid.* He also understood that he had waived his right to appeal everything in his case except if the Court sentenced him above the Guidelines

range.  *Id.* at 10.  The Court later instructed him that the U.S. Probation Office would prepare a PSR, as discussed earlier in the hearing, explaining the process involved in preparing that report.  The Court informed Houff that counsel would get the report and go over it with Houff, instructing him to read it carefully and let counsel know if there were mistakes in the report so changes could be made or objections filed.  Finally, the Court advised Houff of the process involved at the sentencing hearing.  PT 17.  "[A] defendant's representations during the plea-taking carry a strong presumption of verity and pose a formidable barrier in any subsequent collateral proceedings."  *Thompson v. United States*, 872 F.3d 560, 566 (8th Cir. 2017) (citation omitted).

Houff's claims are undermined by documentary evidence from his prior attorney.  Counsel shows in his affidavit that he sent letters to Houff, while Houff was in custody, explaining the Guidelines.  Docket 12 ¶¶ 3, 4.  Counsel attached the letters to the affidavit.  In the first letter, counsel thoroughly explained how the Guidelines work starting with an explanation of the base offense level, informed Houff about adjustments that could be made to it to increase that level, and then advised him about reductions he could receive for accepting responsibility.  Docket 12, Exh. A at 1-2.  Counsel then explained how Houff's criminal history would be determined, providing a copy of U.S.S.G. § 4A1.1 so Houff could review "the rule."  *Id.* at 2.  Counsel then proceeded to provide an estimate of the criminal history points he believed could apply to Houff.  *Ibid.* Counsel also enclosed a copy of the "sentencing table" so Houff could see where he fell, based on counsel's estimates.  *Ibid.*  Counsel then explained that, based

on the calculations that preceded it, his offense level and sentencing range would be "much above the mandatory minimum" and they "should consider measures to reduce [his] sentence." *Id.* at 3. Finally, counsel attached the § 3553[2] factors under the "sentencing statutes," which he noted allowed arguments as to why the Court should sentence Houff below the Guidelines. *Ibid.* Additionally, counsel notes he "tried to foresee anything that could enhance Mr. Houff's sentence" but admittedly, he "did not for[e]see the gun enhancement being applied like it was." But as a result, he filed objections to that enhancement and a detailed sentencing memorandum. Docket 12 ¶¶ 4-5; *see* CR Docket 330.

Based on the foregoing, Houff's claim that counsel did not advise him about the Guidelines or the PSR is wholly without merit. He is unable to demonstrate deficient performance in any way, based on his own admissions during the plea hearing, as well as the documentary evidence counsel submitted. Those items show counsel informed Houff about the Guidelines and the PSR. Moreover, he has not established how he was prejudiced by the allegedly deficient behavior, because even if counsel had failed to advise him about any of these matters, the Court addressed all of them during the change-of-plea hearing, and he confirmed he understood. Houff's motion should be denied as to the allegations of ineffective assistance related to the Guidelines and the PSR.

---

[2] Counsel actually wrote "1553" rather than "3553," but the context makes clear this was a typographical error. *See* Docket 12, Exhibit A at 3.

## b.  Failure to Explain Plea Agreement.

Next, Houff contends counsel did not adequately explain his plea agreement to him.  Docket 1 at 5.  This conclusory statement is contradicted in the record.  The Court asked Houff at the change-of-plea hearing whether he had read and discussed the plea agreement and plea agreement supplement with counsel before signing them.  PT 5.  He confirmed those documents contained the entirety of his agreement with the government.  *Ibid.*  He stated he understood the terms of the documents.  PT 6.  He verified no promises or assurances had been made to him, aside from those contained in the documents, to persuade him to accept them, and he had not been threatened in any way to get him to accept them.  PT 6.  He stated he knew the documents were merely recommendations to the Court, which it could reject without allowing him to withdraw his guilty plea.  PT 6.  Finally, he affirmed no one had threatened or attempted to force him to plead guilty.  PT 6-7.  As above, "a defendant's representations during the plea-taking carry a strong presumption of verity and pose a formidable barrier in any subsequent collateral proceedings."  *Thompson*, 872 F.3d at 566 (8th Cir. 2017).

Counsel notes there was "little more that [he] could have done to explain the plea deal or sentencing guidelines to Mr. Houff."  Docket 12 ¶ 6.  Counsel stated he advised Houff of the options to a defendant in his situation, and thereafter Houff made a knowing, voluntary, and intentional decision.  *Ibid.*

The record, particularly from the change-of-plea hearing, contradicts Houff's unsupported claims.  Houff there confirmed under oath that he had read

and discussed the plea-related documents with counsel before signing them, that the documents were the whole agreement, and that he understood them. His claims to the contrary are insufficient to demonstrate ineffective assistance or prejudice. This portion of his claim should be denied without a hearing.

### c. Failure to Suppress Evidence, Challenge Witnesses or Allow Houff to View Discovery.

Houff next contends counsel failed to "suppress any evidence that was wrongly used against [him] in court as well as test credibility of [his] co-defendants." Docket 1 at 5. He argues he was not aware of the statements made and evidence used against him. He further avers he was never able to view his discovery. *Ibid.*

Houff does not specify what type of evidence should have been suppressed, whether some evidence collection was unlawful, or the basis for any suppression issue. *Ibid.* He does not explain whether the evidence that ostensibly should have been suppressed was physical evidence, statements he made, or something else. He does not specify which statements from which codefendants would potentially be subject to some credibility challenge. Nor does he clarify what about a challenge to any evidence would have caused a change of heart such that he would not have pleaded guilty and proceeded to trial instead.

Conversely, counsel knew exactly what evidence the prosecution had against Houff. Counsel noted in the letter he sent to Houff that he was aware the government believed it could prove a minimum of 34 pounds of methamphetamine was attributable to Houff. Docket 12, Exh. A at 1. Counsel knew the conspiracy involved at least 5 people and that Houff was an organizer

or leader, calling for separate enhancements for each.  Counsel knew Houff could get an obstruction enhancement for failing to appear.  *Ibid.*  Counsel also was aware of Houff's criminal history, though counsel believed the history would result in more criminal history points than the PSR actually attributed to Houff (to Houff's benefit).  *See id.* at 3; PSR ¶ 137.  Further, counsel explained to Houff that he could get a reduction for acceptance of responsibility, which "will be key in your case."  Docket 12, Exh. A at 2.  Counsel explained that Houff had "mentioned reviewing the discovery for any suppression issues," noting he "completely agree[d]" with Houff doing so.  But counsel advised, "if you file a suppression motion and lose, or file the motion, win, but then lose at trial, the Court will not give you this reduction."  *Ibid.*

The evidence against Houff was overwhelming.  He did not object to five paragraphs of information in the PSR that outlined admissions he made about his own conduct.  He admitted driving 20 pounds of methamphetamine from Los Angeles to Sioux Falls with a coconspirator in July 2019, and that he purchased 15 pounds of the drug from another.  PSR ¶ 90.  He provided law enforcement with names of other coconspirators and their role in his drug trafficking organization.  PSR ¶ 91.  He explained how another coconspirator taught him how to traffic the drug by concealing his cell phones, internet usage, and financial transaction fingerprint.  PSR ¶ 92.  Additionally, he explained how he was contacted by a South Dakota State Penitentiary inmate about distributing for the inmate and receiving 12 to 15 pounds of methamphetamine from the

inmate's associate.  PSR ¶ 93.  Finally, he also admitted selling fentanyl pills that led to two individuals overdosing on the drug.  PSR ¶ 94.

Houff provides no specific claim about what suppression motions should have been filed or how any such motion would have benefitted him.  At no point does he provide any claim as to what additional pretrial investigation should have been conducted or what it might have revealed.  He also provides no specific claim as to what discovery he was unable to view.  Houff, therefore, has failed to allege any error, let alone that he was prejudiced.  Given the amount of evidence against him, including extensive involvement to which Houff admitted, there exists no reasonable probability that, had counsel not erred, Houff would not have pleaded guilty but instead would have insisted on going to trial.  *Frausto*, 754 F.3d at 643.  These allegations of ineffective assistance of counsel are refuted by the record, and Houff is unable to demonstrate prejudice.  His conclusory claims should be denied without an evidentiary hearing.

### 2.  Jurisdictional Issue.

Houff's second allegation is listed as "jurisdictional issues."  Docket 1 at 5.  He avers all his crimes were committed in the State of California and not South Dakota.  As a result, he contends, "South Dakota had no right to sentence or indict" him.  *Ibid.*

A prisoner "claiming the right to be released upon the ground . . . that the court was without jurisdiction to impose such sentence . . . or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence."  28 U.S.C. § 2255(a); *see Raymond v.*

*United States*, 933 F.3d 988, 991 (8th Cir. 2019) (noting § 2255 may provide relief for jurisdictional error, constitutional error, or an error of law).

A federal district court has subject matter jurisdiction over federal drug cases. *See* 18 U.S.C. § 3231 (conferring original jurisdiction "of all offenses against the laws of the United States"). Additionally, "[i]n a conspiracy case, venue is proper in any district in which any act in furtherance of the conspiracy was committed by any of the conspirators even though some of them were never physically present there." *United States v. Hull*, 419 F.3d 762, 768 (8th Cir. 2005).

In the factual basis statement, Houff admitted his conspiracy activities occurred "in the District of South Dakota as elsewhere." PSR ¶ 5. He also admitted he distributed methamphetamine to coconspirators, who redistributed the drug to buyers in South Dakota. *Ibid.* He admitted the drug distribution involved U.S. Currency wire deposits and transfers. *Ibid.* He admitted that coconspirators wired funds from the sale of meth to Houff using phone applications, and that he instructed them on the way to wire money acquired from methamphetamine sales to him. *Ibid.*

His PSR showed coconspirators were caught with or admitted receiving drugs in Sioux Falls. Houff had packages sent to him, but had others receive them, paying others to receive the packages for him. PSR ¶ 11. He had repeated conversations with coconspirators about drugs and prices for multi-pound shipments of methamphetamine. PSR ¶ 12. He sent numerous packages from California to a coconspirator's home in Sioux Falls. PSR ¶ 13. Among multiple

other transactions and acts Houff was involved in, two coconspirators informed law enforcement that Houff had mailed 8 kilograms of methamphetamine to Sioux Falls.  PSR ¶¶ 29, 31.  Another coconspirator transported between $15,000 and $20,000 from Houff's distributor in South Dakota to Houff in California. PSR ¶ 33.  Other individuals detailed numerous transactions directed by Houff in Sioux Falls or transportation of drugs between California and Sioux Falls either directed by Houff or involving him.  PSR ¶¶ 36-89.  When he was interviewed, Houff admitted he and a coconspirator drove 20 pounds of the drugs from Los Angeles to Sioux Falls in July 2019.  PSR ¶ 90.

Based on the numerous acts Houff took in furtherance of the conspiracy, venue in a federal district court in South Dakota was proper.  The Court had jurisdiction over the federal statutes under which Houff was charged and convicted.  Jurisdiction was proper in this District, and Houff's claim to the contrary is without merit.

### 3.  Houff's Remaining Claims are Procedurally Defaulted.

### a.  Alleged Excessive Sentencing.

Houff next contends an "excessive sentencing" occurred.  Docket 1 at 6. He argues his PSR was "all wrong and not true which means my points were wrongly added up and used against me in sentencing which caused me to get sentenced to the wrong guidelines." *Ibid.*

Houff's claim is conclusory.  He does not explain what about his Guidelines range was calculated incorrectly.  He does not cite authority demonstrating how enhancements were erroneously applied to him.  He does not clarify what portion

of his criminal history calculation was inapplicable to him.  He claims nothing more than that his "points were wrongly added up and used against" him at sentencing.  Because his claims lack specificity, they lack merit.  This claim should be denied on its face because it is conclusory only.  *Hollis*, 796 F.2d at 1046.

"Ordinary questions of guideline interpretation falling short of the miscarriage of justice standard do not present a proper section 2255 claim." *Sun Bear*, 644 F.3d at 704 (en banc) (internal marks omitted).  The *Sun Bear* court added, "an error of law does not provide a basis for collateral attack unless the claimed error constituted a fundamental defect which inherently results in a complete miscarriage of justice." *Ibid.*  Houff has not shown a miscarriage of justice occurred in the Court's calculation or use of the Guidelines in determining his sentence.

But Houff's claims also fail procedurally.  This claim about the enhancement for a firearm was presented to this Court and addressed at sentencing.  ST 2-6.  The Court overruled Houff's objection to the firearm enhancement.  ST 6.  Houff did not appeal the application of the enhancement, likely because he waived his right to appeal issues related to application of the Guidelines, absent an upward departure or variance.  PT 10.

Notwithstanding the waiver, Houff's claim related to application of the Guidelines is procedurally defaulted because he failed to raise this issue before the Eighth Circuit Court of Appeals.  He has not shown why the issue was not raised there after he brought the issue to this Court's attention at sentencing.

This collateral proceeding cannot be used to take the place of an appeal, and Houff is precluding from presenting this claim that he failed to raise on appeal. *Ward*, 55 F.3d at 413; *Frady*, 456 U.S. at 167-68; *McNeal*, 249 F.3d at 749. Moreover, Houff has failed to show actual innocence, or that his procedural default should be excused based on cause and actual prejudice to him. *Bousley*, 523 U.S. at 621-22. He simply makes the conclusory claim that his Guidelines were calculated incorrectly. This claim should be denied without a hearing.

### b. Alleged Failure to Sentence Houff Similarly to Others.

Houff next claims that, "due to the fact that im in a conspiracy case im entitled to get like sentencing or similar sentencing to my codefendants due to the fact we all are responsible for each others actions." Docket 1 at 6. He complains he received "the most time in my case when we all committed the same crimes [and] this is unfair and wrong." *Ibid.*

As noted above, collateral proceedings may not be used to take the place of an appeal, meaning Houff is precluding from presenting this claim that he failed to raise on appeal. *Ward*, 55 F.3d at 413; *Frady*, 456 U.S. at 167-68; *McNeal*, 249 F.3d at 749. Houff has not shown he is actually innocent of the charges to which he pleaded guilty, nor has he shown the procedural default should be excused. *Bousley*, 523 U.S. at 621-22.

A sentencing disparity among codefendants is not a basis for relief in a § 2255 motion. The Eighth Circuit has repeatedly rejected claims that a defendant is entitled to a downward departure to reduce a disparity with a codefendant's sentence. *See United States v. Watson*, 480 F.3d 1175, 1177 n. 3 (8th Cir. 2007)

("We have repeatedly rejected this argument [that a defendant is entitled to a downward departure under the Guidelines in order to reduce the disparity between his sentence and a codefendant's sentence]."); *United States v. Anderson*, 446 F.3d 870, 877 (8th Cir. 2006) ("[T]he district court correctly recognized that a sentencing disparity among co-defendants is not a proper basis for a departure under the guidelines."); *United States v. Polanco*, 53 F.3d 893, 897 (8th Cir. 1995) ("Disparity between sentences imposed on codefendants is not a proper basis for departure.").

Any disparity between Houff's sentence and that of other coconspirators was based on the amount of methamphetamine he admitted to purchasing and distributing, the firearm involved, his organizer or leader role, and the enhancement for committing the offense as part of a pattern of criminal conduct engaged in as a livelihood. *See* PSR ¶¶ 117, 118, 120. As a result of the enhancements, combined with his Criminal History Category of III, his Guidelines range was life imprisonment. ST 7; PSR ¶ 177. Houff's history and involvement placed him at a higher Guidelines range than other codefendants. He waived his right to appeal those calculations unless the Court sentenced him above the Guidelines range. It did not, and in fact varied downward and sentenced him below that range to a term of 360 months' custody. The Court explained his role in this offense was equal to or greater than another primary coconspirator. It noted Houff's firearm enhancement, as well as the fact he failed to appear after he had been released, coupled with his role in the offense made a lengthy period of incarceration appropriate. ST 15.

As explained above, "[o]rdinary questions of guideline interpretation falling short of the miscarriage of justice standard do not present a proper section 2255 claim." *Sun Bear*, 644 F.3d at 704 (en banc) (internal marks omitted). Moreover, "an error of law does not provide a basis for collateral attack unless the claimed error constituted a fundamental defect which inherently results in a complete miscarriage of justice." *Ibid.* Just as with his previous claim, Houff has not shown a miscarriage of justice resulting from the Court's Guidelines calculation or ultimate sentence.

Because he procedurally defaulted on this claim, and because Guidelines interpretation falls short of showing a miscarriage of justice, Houff's final claim should fail. It should be denied without an evidentiary hearing.

## CONCLUSION

Based upon the foregoing, Houff's § 2255 petition should be dismissed, and an evidentiary hearing is not required. *See United States v. Goodman,* 590 F.2d 705, 710 (8th Cir. 1979) ("files and records of the case may be sufficient alone to dispose of the motion where they 'conclusively show that the prisoner is entitled to no relief.'").

Dated and electronically filed September 28, 2022.

ALISON J. RAMSDELL
United States Attorney

*/s/ Eric Kelderman*
Eric Kelderman
Assistant United States Attorney
515 9th Street, Room 201
Rapid City, South Dakota 57701
Telephone: (605) 342-7822
E-mail: eric.kelderman@usdoj.gov

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on September 28, 2022, a true and correct copy of government's Memorandum in Support of its Answer and Motion to Dismiss was served upon the following person, by placing the same in first-class U.S. Mail, postage prepaid, addressed as follows:

Matthew Houff
79393-112
Three Rivers FCI
P.O. Box 4200
Three Rivers, TX 78071

*/s/ Eric Kelderman*

_____

Eric Kelderman
Assistant United States Attorney