UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| MATTHEW THOMAS HOUFF,<br><br>          Movant,<br><br>     vs.<br><br>UNITED STATES OF AMERICA,<br><br>          Respondent. | 4:22-CV-04070-KES<br><br>REPORT AND RECOMMENDATION |

## INTRODUCTION

This matter is before the court on the *pro se* motion of Matthew Thomas Houff to vacate, correct, or set aside his sentence pursuant to 28 U.S.C. § 2255.  See Docket No. 1.[1]  Now pending is a motion by the United States of America ("government") to dismiss Mr. Houff's motion without holding an evidentiary hearing.  See Docket No. 18.  Mr. Houff has not responded to the government's motion and the time for doing so has long passed.  This matter was referred to this magistrate judge for a recommended disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 57.11.

---

[1] Documents cited from this civil habeas file will be cited using the court's assigned docket number.  Documents from Mr. Houff's underlying criminal case, United States v. Houff, 4:19-CR-40115-02-KES (D.S.D.), will be cited using the court's assigned docket number preceded by "CR."

**FACTS**

**A.    Pre-Plea Matters**

Mr. Houff was indicted in this district and charged with two other co-defendants with conspiring to distribute a mixture and substance containing 500 grams or more of methamphetamine.  CR Docket No. 1.  The original indictment was superseded twice before Mr. Houff was located and arrested in the Central District of California.  CR Docket Nos. 34, 55 and 59.  That court granted Mr. Houff release on conditions.  CR Docket No. 59 at pp. 11-15.  Among the conditions of release was a condition that Mr. Houff appear in the District of South Dakota on or before April 17, 2020.  Id. at p. 11.

Mr. Houff failed to appear at his initial appearance in the District of South Dakota and an arrest warrant was issued for him.  CR Docket No. 69.  Mr. Houff was arrested again in the Central District of California two months later and, this time, the California court detained him.  CR docket No. 93 at pp. 11-13.  An initial appearance was held in this district on July 23, 2020, and attorney Ryan Kolbeck was appointed to represent Mr. Houff.  CR Docket No. 119.

Two months later a third superseding indictment was issued (in August 2020)  and two months after that a fourth superseding indictment was issued (in October 2020).  CR Docket Nos. 219 & 223.  The fourth and final superseding indictment and the third superseding indictment both named Mr. Houff and six other codefendants.  Id.  Mr. Houff was again charged with conspiring to distribute 500 grams or more of a mixture and substance

containing methamphetamine in both charging documents.  Id.  He was also charged with conspiring to launder monetary instruments in both indictments. Id.  The third charge levied against Mr. Houff in both indictments was failure to appear, based on his nonappearance at the April 2020 initial appearance set for him in the District of South Dakota.  Id.

Right before the third superseding indictment was issued and before the government had charged Mr. Houff with failing to appear, Mr. Kolbeck wrote Mr. Houff a letter explaining the possible calculation of his sentencing range under the United States Sentencing Guidelines ("USSG").  Docket No. 12 at pp. 3-5.  Counsel explained that his sentencing range under the USSG would result from two factors:  his total offense level and his criminal history category.  Id. at p. 3.

Counsel set forth the government's representation that it could prove the conspiracy distributed a minimum of 34 pounds of methamphetamine, the equivalent of 15.41 kilograms.  Id.  Counsel wrote that this drug quantity would place Mr. Houff at a base offense level of 36, which was "very high."  Id.

Counsel then went on to explain that Mr. Houff's base offense level could be subject to certain adjustments.  Id.  For example, the base offense level could be increased by four or two levels if the court found Mr. Houff was a leader or organizer.  Id.  In addition, two more points might be added for obstruction of justice for failing to appear for his South Dakota initial appearance.  Id. at pp. 3-4.

3

On the other hand, Mr. Houff could receive up to three points subtracted from his base offense level if he pleaded guilty. Id. at p. 4. Counsel noted that Mr. Houff wanted to discuss a potential suppression issue, something that counsel "completely agree[d] with [Mr. Houff] doing," but counsel stated if MR. Houff pursued a suppression issue and was ultimately convicted of one or more crimes, he would likely not get the downward adjustment for acceptance of responsibility. Id. Counsel predicted a total offense level of 32 to 39. Id.

Counsel then reviewed Mr. Houff's criminal history and gave Mr. Houff a copy of USSG § 4A1.1 so he could read the rule describing how criminal history was calculated under the USSG. Id. Counsel predicted that Mr. Houff would have 11-15 criminal history points and would be in a criminal history category 5 or 6. Id.

Counsel enclosed a copy of the sentencing table from the USSG and explained to Mr. Houff how to calculate his sentencing range. Id. Counsel stated that "once you do the math, you will realize that your offense level and sentencing range will be much above the mandatory minimum." Id. at p. 5. Because of this, counsel advised Mr. Houff to "consider measures to reduce your sentence." Id. Although counsel conceded that he would be allowed to make arguments under 18 U.S.C. § 3553(a) (counsel enclosed a copy of that statute too), counsel advised that "at the end of the day" the court would typically impose a sentence within the USSG range. Id.

In fact, using counsel's predictions, Mr. Houff would have been able to see that his sentencing range under the USSG would range from 188 months

(total offense level of 32, criminal history category of V), to life (total offense level of 39, criminal history category of VI).

Counsel wrote to Mr. Houff again a few days later telling Mr. Houff that the government had now formally charged him with failure to appear. Id. at p. 6. Mr. Kolbeck stated he spoke to the prosecutor and expressed the hope that "they may be more open to dismissing this charge compared to the money laundering offense, provided everything else goes well." Id.

**B.     Plea Agreement**

Seven months after counsel wrote these letters to Mr. Houff, a written plea agreement, statement of factual basis and plea agreement supplement were filed with the court. CR Docket Nos. 281, 282, & 283. Under the terms of the plea agreement, Mr. Houff agreed to plead guilty to the drug and money laundering conspiracy counts and the government agreed to dismiss the failure to appear charge. CR Docket No. 281 at pp. 2-3, ¶ C. The plea agreement recited the penalties for both charges: (1) the drug conspiracy count carried a mandatory minimum sentence of ten years and a maximum sentence of life in prison while the (2) money laundering conspiracy count carried a maximum sentence of twenty years in prison with no mandatory minimum term. Id.

Both parties retained the freedom to recommend any sentence within statutory limits at sentencing. Id. at p. 4, ¶ E. The plea agreement also specified, however, that the government agreed to recommend, or not to oppose, any request by Mr. Houff for a particular sentence or sentencing range under the USSG. Id. at p. 2, ¶ B. The government also agreed to recommend,

5

or not to oppose, any argument by Mr. Houff that a particular provision within the USSG, or policy statement, or sentencing factor, does or does not apply.  Id.

Under the terms of the plea agreement Mr. Houff waived his right to all defenses and his right to appeal any non-jurisdictional issue.  Id. at p. 6, ¶ L. Excluded from the waiver was the right to appeal any upward departure or variance by the court at sentencing.  Id.

A factual basis statement was filed in support of the plea agreement.  CR Docket No. 282.  In that statement, Mr. Houff stated that he conspired to distribute 500 grams or more of a mixture and substance containing methamphetamine in the District of South Dakota and elsewhere.  Id. at p. 1. Mr. Houff admitted that he personally distributed over 500 grams of methamphetamine to co-conspirators and that he was aware some of this methamphetamine would be re-distributed to customers in the District of South Dakota.  Id. at p. 2.  The factual basis statement contained the parties' understanding that additional drug quantities may be attributed to Mr. Houff at sentencing.  Id. at p. 3.

In the factual basis statement Mr. Houff also admitted that in 2019 and 2020 he conspired to launder monetary instruments which involved the proceeds of the drug conspiracy with the intent to conceal and disguise the nature, location, source, ownership and control of the drug proceeds.  Id. at p. 2.

C.     **Change of Plea Hearing**

Mr. Houff appeared before the district court to enter a plea of guilty pursuant to the written plea agreement.  CR Docket No. 448.  At the beginning of the hearing, Mr. Houff was placed under oath.  Id. at p. 2.  All of Mr. Houff's statements discussed below were made under oath, under the penalty of perjury.  Id.

Mr. Houff told the court he was twenty-five, had obtained his GED,[2] and was not under the influence of any alcoholic beverage or drug.  Id. at p. 3.  Mr. Houff told the court he had read and discussed counts one and two of the fourth superseding indictment with his lawyer, Mr. Kolbeck.  Id. at p. 5.  He also told the court he had read and discussed the plea agreement and plea agreement supplement with his lawyer before signing those documents.  Id.  Mr. Houff agreed that those documents represented the entirety of his agreement with the government.  Id.  He further testified he understood those documents.  Id.  He told the court no one had made any promises or assurances to him that were not in writing in the agreements.  Id. at p. 6.  Mr. Houff also told the court no one had threatened him or forced him to accept the agreements.  Id. at pp. 6-7.

The court explained that the recommendations in the agreements were not binding on the court and that the court could sentence Mr. Houff more severely than he was currently anticipating.  Id. at p. 6.  Mr. Houff testified

---

[2] General Equivalency Diploma.

7

under oath that he understood this.  Id.  Mr. Houff testified that he was pleading guilty of his own free will because he was guilty.  Id. at p. 7.

The court explained the penalties for count one were a mandatory minimum sentence of ten years and a maximum of life imprisonment while count two carried a maximum sentence of twenty years.  Id. at pp. 7-8. Mr. Houff testified he understood these were the applicable penalties.  Id.

The district court explained the USSG to Mr. Houff.  Id. at p. 9.  The court told Mr. Houff it was unable to determine his USSG range that day because the calculation would have to await the preparation of a presentence investigative report (PSR) and any objections that were made to the PSR.  Id. Because of the uncertainty, the court explained Mr. Houff's USSG range might be different than what he and Mr. Kolbeck had discussed.  Id.  Mr. Houff stated he understood this.  Id.  The court also explained that it would consider whether there were any grounds to depart or vary either upward or downward from the USSG range once that range was determined.  Id.  Mr. Houff stated he understood this.  Id.

The court explained that, under the plea agreement, Mr. Houff was giving up his right to appeal, but that he retained his right to appeal jurisdictional issues and upward departures or variances at sentencing.  Id. at p. 10. Mr. Houff stated he understood this.  Id.

The court told Mr. Houff he had the right to plead not guilty and to avail himself of a jury trial.  Id.  At the trial, the court told Mr. Houff it would instruct the jury that he was presumed innocent and that the government bore

the burden to demonstrate guilt beyond a reasonable doubt.  Id.  The court

informed Mr. Houff he would have the assistance of a lawyer if he choose to go

to trial.  Id.  The court explained at trial Mr. Houff would get to see and hear all

the witnesses and have them questioned on his behalf.  Id. at p. 11.  At trial

Mr. Houff could choose to testify or he could exercise his right not to testify.

Id.  At trial he would have the right to subpoena witnesses to testify on his

behalf.  Id.  The court explained if Mr. Houff entered a plea of guilty, there

would not be a trial and he would give up all the other rights just described.

Id.  Mr. Houff testified under oath he understood this.  Id.

The court then explained the essential elements the government would

have to prove at a trial for both counts one and two.  Id. at pp. 11-13.

Mr. Houff stated he understood the government's burden to prove these

elements.  Id.

Mr. Houff told the court that he had read and signed the factual basis

statement.  Id. at p. 13.  He further told the court that everything in that

statement was the truth.  Id.

Mr. Houff then entered guilty pleas to both count one and count two of

the fourth superseding indictment.  Id. at p. 16.  After receiving those pleas,

the district court made the following finding:

> It is the finding of the court in the case of United States v. Matthew
> Thomas Houff that the defendant is fully competent and capable of
> entering an informed plea.  That he is aware of the nature of the
> charges and the consequences of both pleas of guilty.  And that the
> pleas of guilty are knowing  and voluntary pleas supported by an
> independent basis in fact containing each of the essential elements

of both offenses.  The pleas are, therefore, accepted, and the
defendant is now adjudged guilty of both offenses.

Id.

The court then explained to Mr. Houff the next step would be the
preparation of the PSR.  Id. at p. 17.  The court explained that he would get a
copy of the PSR and be able to review it with Mr. Kolbeck.  Id.  If there were
mistakes or errors in the report, Mr. Houff had a right to make objections to
the PSR.  Id.

**D.    PSR and Presentence Activity**

A draft PSR was disclosed and Mr. Kolbeck filed written objections to
portions of that draft PSR.  CR Docket Nos. 298, 312.  Counsel's objection was
to the application of a two-level increase in Mr. Houff's base offense level for
possession of a dangerous weapon under USSG § 2D1.1(b)(1).  CR Docket No.
312 at p. 1.  Mr. Kolbeck argued that the gun enhancement should only be
applied under circumstances where a gun was possessed by a defendant and
"it was not clearly improbable that the weapon was connected to the drug
offense."  Id. at p. 3.   Mr. Kolbeck argued that the necessary circumstances for
application of the enhancement were not present in Mr. Houff's case.  Id.

The final PSR retained the gun enhancement.  CR Docket No. 326 at
p. 30.  The PSR calculated Mr. Houff's advisory USSG range as follows:  a base
offense level of 38 (based on 4.5 kilograms or more of methamphetamine), two
points added for the possession of a gun, two points added for aggravating role,
four points added for being the leader or organizer, and three points subtracted
for accepting responsibility, yielding a total offense level of 43.  Id.

10

The final PSR calculated Mr. Houff to have six criminal history points, placing him in criminal history category III.  Id. at p. 33.  Based on a total offense level of 43 and a criminal history category of III, the PSR arrived at an advisory USSG range of life imprisonment.  Id. at p. 41.

Mr. Houff filed two written allocution statements for the court to consider at sentencing.  CR Docket Nos. 299 & 332.  In his first statement, he outlined the things that led him to commit his crimes, his plan for never committing criminal behavior again, and his goals for his life.  CR Docket No. 299.  In the second, he detailed his family and criminal history and explained why he turned to distributing methamphetamine.  CR Docket No. 332.

Prior to sentencing, Mr. Kolbeck filed a motion asking the court to depart downward from the USSG range and to vary downward based on factors in 18 U.S.C. § 3553(a).  CR Docket No. 330.

## E.    Sentencing Hearing

At the sentencing hearing, the court heard argument from both Mr. Kolbeck and government counsel before overruling Mr. Kolbeck's objection to the gun enhancement.  CR Docket No. 450 at pp. 1-6.  The court found that paragraphs 66 and 76 of the PSR, when read together, provided the necessary nexus between the drug activity and the possession of the gun.  Id. at p. 6.

Mr. Kolbeck argued on behalf of Mr. Houff and asked for a sentence less than the sentence of co-defendant Sameer Gentry.  Id. at pp. 7-10.  Counsel stated that Mr. Houff would never have entered the conspiracy but for meeting

Gentry and that Gentry was responsible for passing along his sophisticated methodologies to Mr. Houff.  Id.

Counsel for the government argued for a sentence within the USSG range (life imprisonment).  Id. at p. 12.  She argued that Gentry was less culpable than Mr. Houff because Gentry alone did not have the contacts to be able to distribute meth in South Dakota.  Id.  Also, Gentry did not have a gun enhancement.  Id.  Finally, government counsel pointed out that Gentry made all his court appearances, while Mr. Houff fled and that he got the benefit of having his failure to appear charge dismissed as part of the plea agreement.  Id.

The court explained the seriousness of the offense and the quantity of drugs involved merited a lengthy sentence as did the fact that Mr. Houff had a gun enhancement and had fled.  Id. at p. 15.  Counterbalancing those facts was Mr. Houff's youth.  Id.  Accordingly, the court expressed the view that a term of life imprisonment was not appropriate.  Id.  Instead, she varied downward and imposed a sentence of 360 months' imprisonment on the drug charge.  Id.   The court imposed a sentence of 240 months on the money laundering charge to run concurrently with the drug sentence.  Id.

Mr. Houff did not file an appeal from his conviction and sentence.

**F.    Mr. Houff's § 2255 Motion**

Mr. Houff timely filed his motion to vacate, correct, or set aside his sentence.  Docket No. 1.  He raises the following four claims:

1.    **Ineffective assistance of counsel**—"my lawyer failed to explain my guidelines and how my presentence report would affect

my sentencing.  He failed to explain my plea agreement and to suppress any evidence that was wrongly used against me in court as well as test credibility of my co-defendants I was not aware of the statements and evidence used against me as well as my pleading options I never got to view my discovery."

2.    **Jurisdiction issues**—all of my crimes were committed in the State of California not South Dakota due to this fact South Dakota had no right to sentence or indict me."

3.    **Excessive sentencing**—"my P.S.I. is all wrong and not true which means my points were wrongly added up and used against me in sentencing which caused me to get sentenced to the wrong guidelines."

4.    **Similar sentencing or like sentencing**—"due to the fact that I'm in a conspiracy case I'm entitled to get like sentencing or similar sentencing to my codefendants due to the fact we all are responsible for each others actions so we should get charged the same and held responsible the same I got the most time in my case when we all committed the same crimes this is unfair and wrong."

Docket No. 1 at pp. 5-6.

The government now moves to dismiss Mr. Houff's § 2255 motion without holding an evidentiary hearing.  Docket No. 18.  As indicated above, Mr. Houff has not responded in opposition to the goverhment's motion.

## DISCUSSION

### A.    Scope of a § 2255 Motion

Section 2255 of Title 28 of the United States Code was enacted to supersede habeas corpus practice for federal prisoners.  Davis v. United States, 417 U.S. 333, 343-44 (1974).  Section "2255 was intended to afford federal prisoners a remedy identical in scope to federal habeas corpus."  Id. at 343. Prior to the enactment of § 2255, habeas claims had to be brought in the

13

district where the prisoner was confined, resulting in overburdening those districts where federal correctional institutions were located and presenting logistical issues because the record in the underlying criminal case was often in a distant location.  United States v. Hayman, 342 U.S. 205, 212-16 (1952). The enactment of § 2255 resolved these issues by requiring that the motion be filed in the sentencing court.  Id.

The scope of a § 2255 motion is seemingly broader than the scope of a habeas petition, the latter of which is typically limited to allegations of a constitutional dimension.  Section 2255 allows a federal prisoner to "vacate, set aside or correct" a federal sentence "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack."  See 28 U.S.C. § 2255(a).

Where the allegation for relief is *not* based on a violation of a Constitutional or federal statutory right or an assertion that the court was without jurisdiction, the Supreme Court has read a "fundamentality" requirement into § 2255—relief is available for only those errors which constitute a "fundamental defect which inherently results in a complete miscarriage of justice" or "an omission inconsistent with the rudimentary demands of fair procedure."  Hill v. United States, 368 U.S. 424, 428 (1962); see Peguero v. United States, 526 U.S. 23, 27-30 (1999) (noting collateral relief may be appropriate when a movant is prejudiced by a court's error).

14

Generally, petitioners are precluded from asserting claims pursuant to § 2255 that they failed to raise on direct appeal.  United States v. Frady, 456 U.S. 152, 158-59,167-68 (1982); United State v. Darden, 915 F.3d 579, 586 (8th Cir. 2019) (finding proper standard for reviewing claims not raised on direct appeal is cause and prejudice).

When a § 2255 petitioner asserts a claim that is procedurally defaulted because it was not raised on direct appeal, the claim can only proceed after the petitioner has shown either:  (1) actual innocence or (2) that the procedural default should be excused because there was both cause for the default and actual prejudice to the petitioner.  Bousley v. United States, 523 U.S. 614, 621-22 (1998); McNeal v. United States, 249 F.3d 747, 749 (8th Cir. 2001). Therefore, barring a claim of actual innocence, a petitioner must show both cause for why he failed to raise an issue on direct appeal as well as actual prejudice caused by the alleged errors.  If a movant fails to demonstrate prejudice, the court need not address whether cause exists to excuse a procedural default.  Moore-El v. Luebbers, 446 F.3d 890, 898 (8th Cir. 2006).

Appellate courts generally refuse to review claims of ineffective assistance of counsel on direct appeal; such claims are, therefore, properly addressed in a 28 U.S.C. § 2255 motion such as the one here.  See United States v. Campbell, 6 F.4th 764, 775-76 (8th Cir. 2014); United States v. Lee, 374 F.3d 637, 654 (8th Cir. 2004) ("[I]neffective assistance of counsel [claims] are generally not cognizable on direct appeal" and "may be heard only if a miscarriage of justice would otherwise result . . . or if the district court has developed a record on the

15

issues."). Therefore, no procedural default analysis is required before examining petitioner's claims of constitutionally-deficient counsel.

**B.      Ineffective Assistance of Counsel—Claim One**

**1.      The Standard for Ineffective Assistance Claims**

The Sixth Amendment of the Constitution of the United States affords a criminal defendant with the right to assistance of counsel.  U.S. Const. amend. VI.  The Supreme Court "has recognized that 'the right to counsel is the right to effective assistance of counsel.' " Strickland v. Washington, 466 U.S. 668, 698 (1984) (citing McMann v. Richardson, 397 U.S. 759, 771 n.14 (1970)). Strickland is the benchmark case for determining if counsel's assistance was so defective as to violate a criminal defendant's Sixth Amendment rights and require reversal of a conviction.  Id. at 687.

"When a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness."  Id. at 687-88.  The defendant must also show that counsel's unreasonable errors or deficiencies prejudiced the defense and affected the judgment.  Id. at 691.  The defendant must show, "there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt."  Id. at 695.  In sum, a defendant must satisfy the following two-prong test.  Id. at 687.

> First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.  Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so

16

serious as to deprive the defendant of a fair trial, a trial whose
result is reliable.  Unless a defendant makes both showings, it
cannot be said that the conviction or death sentence resulted from
a breakdown in the adversary process that renders the result
unreliable.

Id.

"There is a presumption that any challenged action was sound trial
strategy and that counsel rendered adequate assistance and made all
significant decisions in the exercise of professional judgment." Hall v.
Luebbers, 296 F.3d 685, 692 (8th Cir. 2002) (quotation omitted).  It is the
petitioner's burden to overcome this presumption, and a "petitioner cannot
build a showing of prejudice on a series of errors, none of which would by itself
meet the prejudice test." Id.  Counsel's conduct must be judged by the
standards for legal representation which existed at the time of the
representation, not by standards promulgated after the representation.  Bobby
v. Van Hook, 558 U.S. 4, 7-9 (2009).  " 'American Bar Association standards
and the like' are 'only guides' to what reasonableness means, not its definition."
Id. at 8 (quoting Strickland, 466 U.S. at 688).

The Supreme Court distinguishes between those cases "in which the new
evidence would barely have altered the sentencing profile presented to the
sentencing judge," and those that would have had a reasonable probability of
changing the result.  Porter v. McCollum, 558 U.S. 30, 41 (2009).  In assessing
the prejudice prong, it is important for courts to consider "the totality of the
available mitigation evidence—both that adduced at trial, and the evidence
adduced in the habeas proceeding" and "reweigh it against the evidence in

17

aggravation." Id. at 40-41 (quotations omitted).  It is not necessary for the petitioner to show "that counsel's deficient conduct more likely than not altered the outcome" of his case, only that there is "a probability sufficient to undermine confidence in [that] outcome." Id. at 44 (quoting Strickland, 466 U.S. at 693-94).  "Judicial scrutiny of counsel's performance must be highly deferential" with "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 698.

### 2.   Counsel Failed to Explain USSG, PSR & Plea Agreement

Although Mr. Houff alleges that counsel failed to explain the USSG, his PSR and the plea agreement, this allegation is belied by contemporaneous evidence.  Seven months before Mr. Houff entered into his written plea agreement, Mr. Kolbeck sent him a letter that thoroughly explained the USSG, even sending Mr. Houff copies of the USSG grid and the guidelines provision explaining how criminal history is calculated.  Docket No. 12.

At his plea agreement, Mr. Houff swore under oath that he had read his plea agreement, discussed it with Mr. Kolbeck, and that he understood the agreement.  CR Docket No. 448 at pp. 5-7.  The district court also explained some of the details of the plea agreement and Mr. Houff stated under oath that he understood. Id. at pp. 6-10.

The district court itself explained the USSG calculation and advised Mr. Houff, before he entered a guilty plea, that the USSG range could not at that time be determined and might be different than he was anticipating. Id. Again, Mr. Houff stated he understood this and wanted to plead guilty. Id.

18

Counsel represented at the sentencing hearing that he had reviewed the PSR with Mr. Houff, a fact Mr. Houff did not contradict.  CR Docket No. 450 at p. 2.

Where a habeas petitioner collaterally attacks his plea by arguing that counsel was ineffective in advising petitioner to plead guilty, the petitioner must show not only that his counsel's performance was deficient, he must also show that he was prejudiced by counsel's substandard advice.  Hill v. Lockhart, 474 U.S. 52, 58-59 (1985) (quoting Strickland, 466 U.S. 668).  In the context of a guilty plea, in order for a habeas petitioner to demonstrate prejudice under Strickland, the petitioner "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."  Hill, 474 U.S. at 59.  Here, Mr. Houff makes no allegation that, had he received effective assistance of counsel, he would not have pleaded guilty and would have insisted on going to trial.  Thus, he has failed to demonstrate prejudice.

"While '[a] petitioner is entitled to an evidentiary hearing on a section 2255 motion unless the motion and the files and the records of the case conclusively show that [he] is entitled to no relief,' no hearing is required 'where the claim is inadequate on its face or if the record affirmatively refutes the factual assertions upon which it is based.' " New v. United States, 652 F.3d 949, 954 (8th Cir. 2011) (quoting Anjulo-Lopez v. United States, 541 F.3d 814, 817 (8th Cir. 2008)).  "A district court may deny an evidentiary hearing where . . . 'the [movant's] allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than

19

statements of fact.' " <u>Guzman-Ortiz v. United States</u>, 849 F.3d 708, 715 (8th
Cir. 2017) (quoting <u>United States v. Sellner</u>, 773 F.3d 927, 929-30 (8th Cir.
2014)).

Here, Mr. Houff's allegations that counsel did not explain the USSG, his
plea agreement, or the PSR are definitively contradicted by the record.  Not only
did counsel explain these things, but the district court re-explained much of
what counsel conveyed to Mr. Houff in his change of plea hearing.  And, most
importantly, Mr. Houff stated under oath that he understood all of these
things.  The court recommends granting the government's motion to dismiss
this part of Mr. Houff's claim one.

### 3.    Counsel Failed to Suppress or Test Codefendants' Credibility

Mr. Houff also alleges counsel was ineffective because he did not file a
motion to suppress or test the credibility of codefendants.  Docket No. 1 at p. 5.
Mr. Houff does not elaborate on what evidence specifically should have been
the subject of a motion to suppress or why that evidence was subject to
suppression.  <u>Id.</u>  Nor does he identify statements of codefendants that are not
credible.  <u>Id.</u>  These claims do not suffice to obtain relief under § 2255 for
Mr. Houff for two reasons.

First, the claims are so vague that the court is unable, under <u>Strickland</u>,
to evaluate whether counsel's performance was below the acceptable standard
under the Sixth Amendment.  Also, because no facts or context are given, the
court is unable to evaluate whether Mr. Houff was prejudiced by counsel's
alleged failures.  Vague, conclusory claims will not suffice for habeas relief.

Bryson v. United States, 268 F.3d 560, 562 (8th Cir. 2001) (vague and conclusory habeas claims do not entitle a petitioner to relief); Spillers v. Lockhart, 802 F.2d 1007, 1009-10 (8th Cir. 1986) (same); Creek v. Weber, 598 F. Supp. 2d 1004, 120 (D.S.D. 2009) (quoting Beavers v. Lockhart, 755 F.2d 657, 663 (8th Cir. 1995) (same).

The second reason the claim is unavailing is because it concerns actions by counsel that would have taken place before Mr. Houff entered a plea.   When a § 2255 petitioner has been convicted in his direct criminal proceedings by entering a guilty plea, the scope of issues available to him to be raised in habeas proceedings is curtailed.  As the Supreme Court has stated:

> [A] guilty plea represents a break in the chain of events which has preceded it in the criminal process.  When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea.  He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards set forth in [McMann v. Richardson, 397 U.S. 759 (1970)].
>
> A guilty plea, voluntarily and intelligently entered, may not be vacated because the defendant was not advised of every conceivable constitutional [issue] he might have to the charge, no matter how peripheral such a plea might be to the normal focus of counsel's inquiry.  And just as it is not sufficient for the criminal defendant seeking to set aside such a plea to show that his counsel in retrospect may not have correctly appraised the constitutional significance of certain historical facts, . . . it is likewise not sufficient that he show that if counsel had pursued a certain factual inquiry such a pursuit would have uncovered a possible constitutional infirmity in the proceedings.

Tollett v. Henderson, 411 U.S. 258, 267 (1973).

The Supreme Court has explained why a guilty plea cuts off all constitutional claims that predate a plea.  Pleas are necessarily based on imperfect knowledge of the law and facts—one can only know what the result of a full-blown jury trial will be after the trial has been had, and even then, truth is still often in dispute.  <u>McMann</u>, 397 U.S. 769-70.  If a defendant admits his commission of a crime, upon good faith, reasonably competent advice from his counsel, the defendant assumes the risk that his attorney might be wrong about the facts or the outcome of a legal issue.  <u>Id.</u> at 774.

The issue presented in habeas proceedings is not whether—in retrospect--counsel was right or wrong about a certain fact or legal analysis, but rather, whether the defendant's plea was made voluntarily and intelligently and upon advice from his attorney that was "within the range of competence demanded of attorneys in criminal cases."  <u>Id.</u> at 770-71.

A voluntary and knowing plea is not transformed into a coerced plea simply because the defendant pleaded guilty to obtain a lesser sentence than the maximum possible penalty that would have been applicable if defendant had been convicted at trial.  <u>Brady v. North Carolina</u>, 397 U.S. 742, 751 (1970); <u>Parker v. North Carolina</u>, 397 U.S. 790, 795 (1970).  Guilty pleas are valid if the court record affirmatively discloses the plea was both voluntary and intelligent.  <u>Boykin v. Alabama</u>, 395 U.S. 238, 242 (1969).

A plea is voluntary if it is made by a defendant who is "fully aware of the direct consequences, including the actual value of any commitments made to him by the court, prosecutor, or his own counsel," and so long as the plea was

22

not induced by threats, misrepresentation, or by promises that are improper, unfulfilled, or unfulfillable.  Brady, 397 U.S. at 755.

A plea is intelligently made if the defendant was aware of the nature of the charge against him, and he was mentally competent and in control of his mental faculties.  Brady, 397 U.S. at 756.  A plea is not rendered unintelligently made simply because, long after the plea was entered, the defendant realizes his cost-benefit analysis as to whether to go to trial or to plead guilty did not correctly take into account every relevant factor which entered into his decision.  Id. at 756-57.

Here, the record demonstrates that Mr. Houff's plea was voluntary, knowing and intelligent.  There are no grounds for overturning that plea that have been demonstrated in this collateral proceeding.  Accordingly, Mr. Houff is precluded from raising claims of ineffective assistance of counsel that took place prior to his guilty plea.  This court recommends dismissing without an evidentiary hearing Mr. Houff's claims that counsel was ineffective for not filing a motion to suppress or test codefendants' credibility.

### 4.    Mr. Houff was not Aware of the Government's Evidence

Mr. Houff alleges he was "not aware of the statements and evidence used against me" and that he "never got to view [his] discovery."  Docket No. 1 at p. 5.  He never specifies what information he now knows that he did not know then, or how knowing that information would have impacted his decision to plead guilty.  During his change of plea and sentencing hearings, Mr. Houff

23

never protested that he was in the dark as to the government's evidence against him.

As noted above, in the context of a guilty plea, a § 2255 movant must demonstrate that, absent counsel's substandard representation, the movant would not have pleaded guilty and would have insisted on going to trial. Hill, 474 U.S. at 59. Mr. Houff's failure to make this allegation means he has not carried his burden to demonstrate Strickland prejudice. Id.

Moreover, the court finds Mr. Houff's allegation to be "contradicted by the record, [or] inherently incredible" Guzman-Ortiz, 849 F.3d at 715 (quoting Sellner, 773 F.3d at 929-30). Counsel demonstrated in his letters to Mr. Houff that he was very familiar with the discovery in Mr. Houff's case. Counsel stated the government believed it could prove Mr. Houff distributed 34 pounds of methamphetamine. Docket No. 12 at p. 3. Counsel indicated Mr. Houff's role in the conspiracy would likely result in receiving enhancements under the USSG for being a leader of five or more participants. Id.

Furthermore, Mr. Houff himself demonstrated great familiarity with the details of the government's investigation based on admissions he made. He told agents that he and a codefendant had driven 20 pounds of meth from Los Angeles to Sioux Falls in a U-Haul truck in July 2019 and then distributed the meth in Sioux Falls. CR Docket No. 326 at p. 25, ¶ 90. He stated he purchased a car from a codefendant that had an aftermarket compartment in the front and rear passenger seats for covertly transporting drugs. Id. at ¶ 91. He then hired two women to drive the car from California to South Dakota with

24

a load of methamphetamine.  Id.  He testified another codefendant would receive packages of meth on Mr. Houff's behalf in Sioux Falls.  Id.  Mr. Houff described meeting codefendant Sameer Gentry, who taught Mr. Houff how to traffic meth and how to conceal his digital footprint with regard to cell phone and internet usage and financial proceeds of drug distribution.  Id. at ¶ 92.

Mr. Houff described being contacted by a third party, Ray Camacho, in the summer of 2019 while Camacho was imprisoned in the South Dakota State Prison.  Id. at p. 26, ¶ 93.  Mr. Houff picked up a duffle bag containing 12-15 pounds of meth in a Sioux Falls grocery store parking lot for Camacho and was directed by Camacho where to deliver the meth.  Id.

Mr. Houff stated he sold fentanyl pills in Sioux Falls, believing they were oxycontin, and caused two women to overdose on July 11, 2019.  Id. at ¶ 94.  Immediately prior to his first arrest in California, Mr. Houff stated he had sent one pound of meth to Sioux Falls.  Id.

Mr. Houff's claim is vague and conclusory and should be dismissed on that ground.  In addition, because he never alleges he would have gone to trial had he reviewed the discovery, he fails to show prejudice under Strickland.  Finally, Mr. Houff's claim is unbelievable given the information in the record.  For all these reasons, the court recommends this part of Mr. Houff's claim one be dismissed without holding an evidentiary hearing.

## C.    Lack of Jurisdiction—Claim Two

Mr. Houff claims this court lacked jurisdiction because all of his activities in furtherance of the conspiracy took place in California, not South

Case 4:22-cv-04070-KES   Document 20   Filed 11/29/22   Page 26 of 30 PageID #: 95

Dakota.  Docket No. 1 at p. 5.  A federal district court has jurisdiction over a drug conspiracy prosecution so long as any act in furtherance of the conspiracy was committed by any of the conspirators in the charging district. United States v. Hull, 419 F.3d 762, 768 (8th Cir. 2005).

Here, as detailed immediately above, Mr. Houff told agents that he himself had driven twenty pounds of meth to Sioux Falls in a U-Haul and distributed it here, that he himself had arranged for two women to bring meth to South Dakota concealed in aftermarket compartments, that he himself received 12-15 pounds of meth on behalf of Ray Camacho in Sioux Falls and that Mr. Houff delivered that meth, and that he himself sold fentanyl pills in Sioux Falls.  CR Docket No. 326 at pp. 25-26, ¶ 90-94.  This is more than sufficient nexus with the crime for this district to have exercised jurisdiction over Mr. Houff for the drug conspiracy crime.

Moreover, Mr. Houff could have appealed the jurisdictional issue as the appeal waiver in his plea agreement allowed him to appeal any jurisdictional issue.  CR Docket No. 281 p. 6, ¶ L.  Mr. Houff did not file an appeal. Therefore, this issue is procedurally defaulted because it was an issue that could have been raised on appeal and was not.  Bousley, 523 U.S. at 621-22; McNeal, 249 F.3d at 749.  Therefore, barring a claim of actual innocence, Mr. Houff must show both cause for why he failed to raise this issue on direct appeal as well as actual prejudice caused by the alleged errors.  Id.  Mr. Houff never acknowledges his procedural default and makes no effort to show actual

innocence or cause and prejudice.  Accordingly, this court cannot reach the
merits of his claim.

Because there is no factual basis for Mr. Houff's jurisdictional argument,
and because his jurisdictional argument is procedurally defaulted, this court
recommends claim two be dismissed without holding an evidentiary hearing.

**D.    Excessive Sentencing—Claim Three**

In claim three, Mr. Houff alleges his PSR was "all wrong" and "not true"
and that this resulted in his USSG calculation being "wrongly added up" and
that he was "sentenced to the wrong guidelines."  Docket No. 1 at p. 6.
Mr. Houff never explains what parts of the PSR were wrong or untrue nor how
that affected his USSG calculation.  Id.  Such vague and conclusory claims do
not merit relief under § 2255.  Bryson, 268 F.3d at 562; Spillers, 802 F.2d at
1009-10;  Creek, 598 F. Supp. 2d at 120 (quoting Beavers, 755 F.2d at 663).

In addition to the lack of specificity, arguably Mr. Houff was not
sentenced under the USSG at all so any error in calculating his USSG range
was harmless.  Mr. Houff's USSG range as calculated by the district court
yielded a sentence of lifetime imprisonment for Mr. Houff.  CR Docket No. 450
at pp. 6-7.  But, because of Mr. Houff's youth, the district court found the
USSG range to be inappropriate and instead sentenced him to 360 months'
imprisonment.  Id. at p. 15.

Finally, even if a mistake were made in calculating Mr. Houff's USSG
range, he cannot obtain relief under § 2255 if the same sentence could have
been imposed even without the mistake.  See Montanye v. United States, 77

F.3d 226, 230-231 (8th Cir. 1996) (where the petitioner was sentenced to 360 months incarceration, and the Guidelines range was 360 months to life under the PSR as written, but the same range would have been available to the district court for sentencing if the objection had been made and sustained, petitioner could not show prejudice).  Cf. Sun Bear v. United States, 644 F.3d 700, 705 (8th Cir. 2011) (movant cannot state a claim under § 2255 attacking district court's sentence where the sentence was within statutory limits and the same sentence could have been imposed even if the movant were granted the § 2255 relief he requests).

Because Mr. Houff provides no details about the errors he alleges were made in calculating his USSG range, he has failed to demonstrate that the district court would have been unable to impose the same sentence it did impose even without the mistakes.  For  all of these reasons, the court recommends dismissing Mr. Houff's claim three without holding an evidentiary hearing.

**E.**    **Disparate Sentences—Claim Four**

Mr. Houff asserts that he received a harsher sentence than his codefendants and that, in a conspiracy case, all codefendants should get the same or similar sentences.  Docket No. 1 at p. 6.  Again, Mr. Houff provides no details.  He does not compare his sentence against those received by any other codefendant in the conspiracy.  For that reason alone, the claim must be dismissed as vague and conclusory.  Bryson, 268 F.3d at 562; Spillers, 802

28

F.2d at 1009-10;  Creek, 598 F. Supp. 2d at 120 (quoting Beavers, 755 F.2d at 663).

But more to the point, Mr. Houff's sentence was a product of factors that applied to him and not to others.  He received enhancements under the USSG for possessing a firearm, for being a leader or organizer of the conspiracy, for supporting himself through his criminal conduct, and for the amount of drugs he was responsible for distributing within the conspiracy.  CR Docket No. 326 at pp. 29-30, ¶¶ 111, 115-120.  Mr. Houff has not shown that any codefendant was subject to the same factors and received a more favorable sentence.  Accordingly, even if disparity in sentencing was a viable claim under § 2255 (something the court does not here hold), Mr. Houff has failed to demonstrate a factual basis for such a claim.  The court recommends claim four be dismissed without holding an evidentiary hearing.

## CONCLUSION

Based on the foregoing facts, law, and analysis, this magistrate judge respectfully recommends granting the government's motion to dismiss [Docket No. 18] in full and dismissing Mr. Houff's § 2255 motion without holding an evidentiary hearing.

## NOTICE TO PARTIES

The parties have fourteen (14) days after service of this report and recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained.  Failure to file timely objections will result in the waiver of the right to appeal questions of fact.

Objections must be timely and specific in order to require *de novo* review by the district court.  Thompson v. Nix, 897 F.2d 356 (8th Cir. 1990); Nash v. Black, 781 F.2d 665 (8th Cir. 1986).

DATED this 29th day of November, 2022.

BY THE COURT:

VERONICA L. DUFFY
United States Magistrate Judge